UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DAVID C.,

                Plaintiff,                    **DECISION AND ORDER**

    v.

                                        1:22-CV-00965 EAW

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

# **INTRODUCTION**

Represented by counsel, plaintiff David C. ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying his application for supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. 7; Dkt. 8), and Plaintiff's reply (Dkt. 9). For the reasons discussed below, the Commissioner's motion (Dkt. 8) is granted and Plaintiff's motion (Dkt. 7) is denied.

## BACKGROUND

Plaintiff protectively filed his application for SSI on April 11, 2019. (Dkt. 5 at 15, 97).[1] In his application, Plaintiff alleged disability beginning April 11, 2018. (*Id.*). Plaintiff's application was initially denied on January 23, 2020. (*Id.* at 15, 130-37). His application was denied upon reconsideration on August 25, 2020. (*Id.* at 15, 139-46). At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Stephen Cordovani on June 15, 2021. (*Id.* at 15, 36-59). On July 21, 2021, the ALJ issued an unfavorable decision. (*Id.* at 12-28). Plaintiff requested Appeals Council review; his request was denied on October 14, 2022, making the ALJ's determination the Commissioner's final decision. (*Id.* at 6-11). This action followed.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)

---

[1] When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

(quotation omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II. Disability Determination

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 416.920(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 416.920(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 416.920(d). If the impairment meets or medically

equals the criteria of a Listing and meets the durational requirement, *id*. § 416.909, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id*. § 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id*. § 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted).

## DISCUSSION

### I. The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since April 11, 2019, the application date. (Dkt. 5 at 17).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of: "seizure disorder and right ear hearing loss." (*Id.*). The ALJ further found that Plaintiff's hepatitis C, gastroesophageal reflux disease ("GERD"), obesity, diabetes, lumbar

baceteremia/sepsis, and mental impairments of neurocognitive disorder, bipolar disorder, anxiety disorder, posttraumatic stress disorder ("PTSD"), unspecified bipolar disorder, and cocaine, heroin, and alcohol use disorders, in remission, were non-severe. (*Id*. at 17-18).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id*. at 24). The ALJ particularly considered the criteria of Listings 2.10 and 11.02 in reaching his conclusion. (*Id.*).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform a full range of work at all exertional levels, with the following nonexertional limitations: "[Plaintiff] is limited to work with no climbing of ladders, ropes, or scaffolds; no work around hazards such as unprotected heights, moving mechanical parts or flammable liquids; and no loud noise exposure." (*Id.*). At step four, the ALJ found that Plaintiff has no past relevant work. (*Id.* at 27).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of cart attendant, cleaner II, and salvage laborer. (*Id.*). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.* at 28).

II. **The ALJ's Determination is Supported by Substantial Evidence and Free from Reversible Error**

Plaintiff asks the Court to vacate the ALJ's decision and remand this matter to the Commissioner for a new hearing, arguing that: (1) the ALJ erred by failing to adequately

evaluate the opinion evidence of Plaintiff's counselor, licensed master social worker Anna Frey ("LMSW Frey"), and psychiatric nurse practitioner, Angela Roche ("NP Roche") in connection with his determination that Plaintiff's mental impairments were non-severe;[2] and (2) the ALJ failed to identify and resolve conflicts between the VE's testimony and the Dictionary of Occupational Titles ("DOT") in concluding that there were jobs in the national economy that Plaintiff could perform. (*See* Dkt. 7-1 at 11). The Court is not persuaded by these arguments, for the reasons discussed below.

A. <u>Assessment of Opinion Evidence</u>

Plaintiff first argues that the ALJ erred in his evaluation of the medical opinion evidence in the record relating to Plaintiff's mental functional limitations.

### 1. Legal Standard Regarding Evaluation of Medical Opinion Evidence

The Commissioner's regulations relating to the evaluation of medical evidence were amended for disability claims filed after March 27, 2017. Revisions to Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844-01, at *5844

---

[2] Relatedly, Plaintiff also asserts that the ALJ erred by failing to properly evaluate Plaintiff's mental impairments at step two and include appropriate mental impairment-related limitations in the RFC finding. (Dkt. 7-1 at 11). As explained herein, the ALJ's finding at step two was supported by substantial evidence. Moreover, even if the ALJ erred in determining that Plaintiff's mental limitations were not severe, such error is harmless in this case because the ALJ considered Plaintiff's mental impairments in subsequent steps. *See McCravy v. Kijakazi*, No. 22-cv-2832, 2023 WL 7130345, at *2 n.4 (2d Cir. Oct. 30, 2023) (error at step two is harmless when ALJ considered impairment during the remaining steps in the sequential analysis); *Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (step two error was harmless where all of the claimant's conditions "were considered during the subsequent steps").

(Jan. 18, 2017).  Because Plaintiff's claim was filed on April 11, 2019, the new regulations, codified at 20 C.F.R. § 416.920c, apply.

Pursuant to the new regulations, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 416.920c(a).  Further, when a medical source provides one or more medical opinions, the Commissioner will consider those medical opinions from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of the applicable sections.  *Id.*  Those factors include: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, purpose and extent of the treatment relationship, and the examining relationship; (4) specialization; and (5) any other factors that "tend to support or contradict a medical opinion or prior administrative medical finding."  *Id.* at § 416.920c(c).

When evaluating the persuasiveness of a medical opinion, the most important factors are supportability and consistency.  *Id.* at § 416.920c(a).  With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  *Id.* at § 416.920c(c)(1).  With respect to "consistency," the new regulations prove that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the

evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at § 416.920c(c)(2).

The ALJ must articulate his consideration of the medical opinion evidence, including how persuasive he finds the medical opinions in the case record. *Id.* at § 416.920c(b). "Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still articulate how [he or she] considered the medical opinions and how persuasive [he or she] find[s] all of the medical opinions." *Andrew G. v. Comm'r of Soc. Sec.*, No. 3:19-CV-0942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020) (quotations and citation omitted). Specifically, the ALJ must explain how he considered the "supportability" and "consistency" factors for a medical source's opinion. 20 C.F.R. § 416.920c(b)(2). The ALJ may—but is not required to—explain how he considered the remaining factors. *Id.*

Although the applicable regulations state that an ALJ "will evaluate every medical opinion [he] receive[s,]" *id.* at § 416.927(c), "[a]n ALJ need not recite every piece of evidence that contributed to the decision, so long as the record permits [the Court] to glean the rationale of an ALJ's decision[,]" *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013). "[F]ailure to discuss and/or weigh a medical opinion is not per se remandable error

but may be found harmless error." *Sherry L. v. Comm'r of Soc. Sec.*, No. 20-CV-01432, 2022 WL 2180159, at *6 (W.D.N.Y. June 16, 2022) (collecting cases).

### 2. The ALJ's Assessment of the Opinions of LMSW Frey and NP Roche is Supported by Substantial Evidence

Plaintiff contends that the ALJ did not properly evaluate the medical opinions of Plaintiff's treating therapist LMSW Frey and treating psychiatric NP Roche. (Dkt. 7-1 at 15). Specifically, Plaintiff faults the ALJ for rejecting the two medical sources' opinions "without discussing the remarkable consistency between the opinions." (*Id.* at 16). Plaintiff argues that both providers opined that Plaintiff was "seriously limited" in his ability to perform in a workplace setting and that he would be absent from work more often than an employer would permit. (*Id.* at 16-17). According to Plaintiff, the ALJ cherry-picked from the records to find the opinions unpersuasive while failing to note their consistency with other evidence. (*Id.* at 17). Defendant argues that the ALJ was not required to specifically discuss the consistency between the opinions of LMSW Frey and NP Roche and that the ALJ's assessment of the medical opinion evidence was properly evaluated. (Dkt. 8-1 at 12-13).

As an initial matter, contrary to Plaintiff's assertion, the ALJ did appear to recognize similarities between the two opinions, stating: "As with Ms. Frey's opinion, Nurse Roche's opinion is inconsistent with the treatment record and unsupported by objective mental status results." (Dkt. 5 at 22). Notwithstanding the ALJ's apparent reference to the consistency between the opinions of LMSW Frey and NP Roche, he was not required to specifically assess the consistency between their opinions as long as he considered their consistency with the record as a whole. *See Rushford v. Kijakazi*, No. 23-cv-317, 2023

WL 8946622, at *2 (2d Cir. Dec. 28, 2023) ("As required, the ALJ addressed each opinion in turn, explaining why – or why not – he found each opinion to be 'supported' by the record and 'consistent' with the other evidence."); *Darla W. v. Comm'r of Soc. Sec.*, No. 5:20-cv-1085 (TWD), 2021 WL 5903286, at *9 (N.D.N.Y. Dec. 14, 2021) ("The consistency factor does not measure whether a medical opinion is consistent with a single other medical opinion—it measures whether the medical opinion is consistent with *all* medical and nonmedical evidence in a claim."). While Plaintiff cites *Gary F. v. Comm'r of Soc. Sec.*, No. 6:20-CV-6735-LJV, 2022 WL 16540354, at *3 (W.D.N.Y. Oct. 28, 2022), for the principle that an ALJ's failure to expressly address the consistency between two medical opinions is reversible error, (Dkt. 7-1 at 17), the facts in that case are distinguishable. In *Gary F.*, the ALJ did not acknowledge substantial similarities between the only two treating source opinions in the record and instead, treated the "medical opinions in isolation." 2022 WL 16540354, at *3. Here, however, the ALJ not only considered the opinions at issue in connection with each other, but also in connection with the record as whole.

For example, in his assessment of Plaintiff's mental functioning, the ALJ explained why he found the medical opinions of Susan Santarpia, Ph.D., and S. Juriga, Ph.D., to be persuasive (Dkt. 5 at 21, 26), in contrast to the opinions of LMSW Frey and NP Roche, which he deemed unpersuasive (*id.* at 22).

Dr. Santarpia conducted a psychiatric evaluation of Plaintiff on August 18, 2020, and opined that Plaintiff:

> [P]resents as able to understand, remember, and apply simple, as well as complex, directions and instructions, use reason and judgment to make work-

> related decisions, interact adequately with supervisors, coworkers, and the public, sustain concentration and perform a task at a consistent pace, sustain an ordinary routine and regular attendance at work, maintain personal hygiene and appropriate attire, and to be aware of normal hazards and take appropriate precautions within normal limits. Mild impairment is demonstrated in regulating emotion, controlling behavior, and maintaining well being.

(Dkt. 6 at 980). The ALJ concluded that Dr. Santarpia's opinion was persuasive, stating:

> Overall, Dr. Santarpia's medical opinion is persuasive in finding the claimant has no or mild mental deficits since becoming sober in October 2019. Her findings are supported by her unremarkable mental status findings and general narrative discussion. Additionally, they are consistent with the longitudinal treatment record that consistently shows few significant mental status abnormalities since he attained sobriety.

(Dkt. 5 at 21). He further noted that the opinions were consistent with those provided by state agency medical consultant Dr. Juriga. (*Id.*).

Similar to Dr. Santarpia, Dr. Juriga opined that Plaintiff had no severe mental impairments, with only a mild limitation in adapting or managing himself, and no limitations in understanding, remembering, or applying information, interacting with others, and concentrating, persisting, or maintaining pace. (*Id.* at 118). The ALJ concluded that Dr. Juriga's "findings are consistent with the longitudinal treatment record as a whole and supported by the medical findings cited within," again noting that since Plaintiff attained sobriety in October 2019, Plaintiff "has exhibited few mental status abnormalities with no evidence of psychological deficits apart from mild adaptive limitations," and the record reflects "no evidence of disordered thought processes or other cognitive/intellectual deficits." (*Id.* at 26).

In contrast, LMSW Frey opined in January 2020 that Plaintiff had marked or serious limitations in demonstrating the capacity to maintain attention and concentration, dealing

with normal work stresses, or working in proximity to others without being unduly distracted. (Dkt. 6 at 1041). LMSW Frey concluded that Plaintiff had mild limitations in an ability to attend to a routine or maintain a schedule, and no limitations in following, understanding, and remembering simple instructions or responding appropriately to co-workers or supervisors. (*Id.*). In November 2020, LMSW Frey completed an employability assessment and opined that Plaintiff had a marked or serious limitation in maintaining attention and concentration and moderate limitation in dealing with normal work stresses and working in coordination with others. (*Id.* at 1045). She also opined in May 2021 that Plaintiff continued to be seriously limited in setting realistic goals or making plans independently of others and dealing with the stress of semiskilled and skilled work. (*Id.* at 1164). She indicated that he would be absent from work for more than four days per month if working full time. (*Id.* at 1165). In finding LMSW Frey's opinions not persuasive, the ALJ explained:

> [LMSW Frey's] opinion indicating serious limitations and several significant mental status abnormalities are not consistent with contemporaneous treatment notes showing generally stable function since October 2019. I note that her mental status examination from December 2019 was unremarkable apart from anxious mood (Exhibit 27F, p. 3). Her opinion that he would be absent four times per month if working full time is not adequately explained. Overall, her reports are not consistent with the claimant's intact mental status functioning during most of the period at issue.

(Dkt. 5 at 22). The Court finds that the ALJ's assessment of LMSW Frey's opinion to be proper and well-supported by the record. As required by the regulations applicable to Plaintiff's claim, the ALJ considered both the consistency and the supportability of the opinion. *Brian M. v. Comm'r of Soc. Sec.*, No. 1:21-CV-00273 EAW, 2023 WL 3082221, at *9 (W.D.N.Y. Apr. 24, 2023). Further, it is well-established that an ALJ may discredit

- 12 -

those portions of an opinion that are inconsistent with the source's own treatment notes. *See, e.g., Domm v. Colvin*, 579 F. App'x 27, 28 (2d Cir. 2014). Plaintiff's disagreement with the ALJ's assessment of LMSW Frey's opinion is not evidence of impermissible cherry-picking. Nor is there error in discounting portions of an opinion that are conclusory or not well-explained. *Luciana A. v. Comm'r of Soc. Sec.*, No. 20-CV-1448-FPG, 2022 WL 2988094, at *4 (W.D.N.Y. July 28, 2022) (holding that ALJ's conclusion that treating source "employed vague language that could not be readily translated into functional limitations" and was not supported by "a substantive explanation" were "permissible reasons to reject" the opinion).

Similarly, NP Roche completed a mental RFC questionnaire on May 11, 2021. (Dkt. 6 at 1168-72). In it, she opined that Plaintiff is seriously limited in: remembering work-like procedures; working in coordination with others without being distracted; completing a normal workday without interruptions from psychologically-based symptoms; performing at a consistent pace without an unreasonable number and length of rest periods; responding appropriately to changes in a routine work setting; and dealing with normal work stress. (*Id.* at 1170). The ALJ concluded that NP Roche's "opinion is inconsistent with the treatment record and unsupported by objective mental status results. Her findings appear largely based on the claimant's subjective report rather than the objective findings noted in the treatment record since October 2019." (Dkt. 5 at 22). As noted, the contrast between the documented information contained in Plaintiff's treatment records and NP Roche's opinion was an appropriate consideration for the ALJ to consider

in assessing the persuasiveness of the opinion, and the Court identifies no error in that assessment.

In sum, Plaintiff has not established that the ALJ mischaracterized LMSW Frey or NP Roche's treatment records or opinions, but rather, seemingly challenges the ALJ's conclusions as to each provider's opinions. But in finding that the ALJ's assessment of the medical opinion evidence is supported by substantial evidence, the question is whether "a reasonable mind might accept [the relevant evidence] as adequate to support" the ALJ's conclusion. *See Moran*, 569 F.3d at 112. And when medical opinions of record offer differing conclusions with respect to a plaintiff's impairments, it is the ALJ's function to resolve the conflict. *See Bryan F. v. Comm'r of Soc. Sec.*, No. 1:20-CV-0055-DB, 2021 WL 1737760, at \*5 (W.D.N.Y. May 3, 2021) ("[I]t is within the ALJ's discretion to resolve genuine conflicts in the evidence. In so doing, the ALJ may choose between properly submitted medical opinions." (quotation omitted)). In the instant case, the ALJ did just that. While Plaintiff argues that the ALJ should have emphasized the specific consistencies between the opinions of LMSW Frey and NP Roche, it was within the province of the ALJ to conclude that other opinions in the record were more persuasive. Plaintiff essentially invites the Court to reweigh the evidence and conclude that LMSW Frey and NP Roche were entitled to more credence than Dr. Santarpia and Dr. Juriga. That is not the function of this Court. *Donna C. v. Comm'r of Soc. Sec.*, No. 1:20-CV-507 (JLS), 2022 WL 2063254, at \*6 (W.D.N.Y. June 8, 2022) ("In other words, to the extent Plaintiff objects to the ALJ's consideration of the medical opinion evidence, this Court may not 'decide the

facts anew, reweigh the evidence, or substitute its own judgment for that of the [ALJ].'" (quoting *Fanton v. Astrue*, 2011 WL 282383, at *2 (W.D.N.Y. Jan. 25, 2011))).

Accordingly, remand on this basis is not required.

**B.** **Conflict Between VE Testimony and DOT**

Plaintiff argues that the ALJ's step five analysis was not supported by substantial evidence because the ALJ failed to identify and resolve conflicts between the VE's testimony and the DOT, and improperly relied on the jobs that the VE identified to find Plaintiff not disabled. (Dkt. 7-1 at 12). The Court disagrees.

At step five of the sequential analysis, "[t]he Commissioner may rely on a vocational expert's testimony concerning the availability of jobs suited to a hypothetical person's capabilities so long as the hypothetical is based on substantial evidence." *Mancuso v. Astrue*, 361 F. App'x 176, 179 (2d Cir. 2010). As explained by the Second Circuit:

> A 2000 Social Security Administration Policy Interpretation Ruling (the "Ruling") governs the Commissioner's assessment of whether any particular job can accommodate a given claimant's physical limitations. Under the Ruling, the Commissioner "rel[ies] primarily on the [Dictionary] . . . for information about the [job's] requirements" but "may also use [vocational experts] . . . to resolve complex vocational issues." SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000). If the Commissioner does consider the testimony of such experts, however, she must be alert to the possibility of "apparent unresolved conflict[s]" between the testimony and the Dictionary. *Id.* In light of this possibility, the Ruling tasks the Commissioner with "an affirmative responsibility to ask about any possible conflict," *id.* at *4, and

to "elicit a reasonable explanation for [any such] conflict before relying on the [vocational expert's testimony]," *id.* at *2.

*Lockwood v. Comm'r of Soc. Sec.*, 914 F.3d 87, 92 (2d Cir. 2019) (citation omitted).

Here, the ALJ identified Plaintiff as having, among other nonexertional limitations, a limitation of no loud noise exposure. (Dkt. 5 at 24). The DOT and companion Selected Characteristic of Occupations ("SCO") identify the noise intensity levels for certain occupations, ranging from a range of level one defined as "very quiet," level two of "quiet," level three of "moderate," level four of "loud" and up to a level five of "very loud." *Bridget P. v. Comm'r of Soc. Sec.*, No. 3:21-CV-654 (CFH), 2023 WL 2402782, at *13 (N.D.N.Y. Mar. 8, 2023) ("The Department of Labor categorizes noise by five levels: 'Very Quiet', 'Quiet', 'Moderate', 'Loud', 'Very Loud.'").

At Plaintiff's hearing, the ALJ provided the VE with a hypothetical individual whose RFC matched that of Plaintiff, including the limitation of no loud noise exposure, and asked if jobs in the national economy existed for this individual. (Dkt. 5 at 56). The VE testified that Plaintiff could perform the representative occupations of cart attendant, cleaner II, and salvage laborer. (*Id.* at 57).

The ALJ determined that the VE's testimony was consistent with the DOT. (*Id.* at 27). Plaintiff argues that the ALJ erred in making this finding because the cleaner II and salvage laborer occupations require loud (level four) noise exposure. *See* Cleaner II, DOT 919.687-014, 1991 WL 687897; Salvage Laborer, DOT 929.687-022, 1991 WL 688172. The Court agrees that the RFC restriction to no loud noise exposure conflicts with the VE's testimony for these two occupations. *See Lockwood*, 914 F.3d at 92.

However, any error is harmless because the third occupation identified, cart attendant ("Bagger" in the DOT), requires only moderate (level three) noise exposure. *See* Bagger, DOT 920.687-014, 1991 WL 687964. In the national economy, 71,551 jobs as a cart attendant exist. (Dkt. 5 at 27, 57). "[A]lthough vocational experts customarily offer three jobs that a claimant perform as part of their testimony, the ALJ does not have a corresponding duty to find that each of the three jobs offer significant numbers of jobs in the national economy: one occupation is sufficient." *Angi W. v. Comm'r of Soc. Sec.*, No. 21-CV-0557 (CJS), 2023 WL 2595008, at *11 (W.D.N.Y. Mar. 22, 2023); *see also Bavaro v. Astrue*, 413 F. App'x 382, 384 (2d Cir. 2011) ("The Commissioner need show only one job existing in the national economy that Bavaro can perform."); *Coleman v. Astrue*, 269 F. App'x 596, 602 (7th Cir. 2008) (finding harmless error where sufficient occupations remained available to plaintiff after subtracting occupations described by the vocational expert in a manner that conflicted with the DOT). Accordingly, because here the ALJ identified one job with significant numbers in the national economy that Plaintiff could perform, the ALJ's conclusion at step five was supported by substantial evidence, and remand on this basis is not required.

## **CONCLUSION**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 8) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 7) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: February 1, 2024
       Rochester, New York